IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SOPEE KHEN,

    Petitioner,                       No. CIV-S-04-2150 ALA HC

    vs.

WARDEN OF HIGH DESERT
STATE PRISON,                       <u>ORDER</u>

    Respondent.
_____/

    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a conviction entered in the San Joaquin County Superior Court on February 7, 2000, stemming from a home invasion robbery. Petitioner was sentenced to life with the possibility of parole, plus twelve years. For the reasons explained below Petitioner's petition is denied

I

    On direct appeal, the California Court of Appeal summarized the facts underlying Petitioner's conviction and sentence as follows:

> During the early morning hours of March 30, 1998, five men armed with firearms forcibly entered an apartment occupied by Kim C., her boyfriend and their two young children, Kim's parents and her brother. In the course of robbing and assaulting the residence, two of the men held Kim on a couch in the front

1

room, inserted their fingers in her vagina, and one raped her in front of her family.

In March 1998, the [petitioner] along with Chittra Mom (Mom), Chanthoeurn Chhoun (Chhoun), and Khun Sovanne (Sovanne) were members of the Original Bloods, a Stockton street gang with about 65 members. According to Seng Neth (Neth), on March 29 he got together with the above four gang members and they began drinking.[1] Later, all five men got into Sovanne's white Honda and drove about "look[ing] for a place to rob." They stopped at Kim C.'s residence and Sovanne and Chhoun, each armed with a firearm, approached and kicked in the door. The others entered and they began robbing the occupants. All five had cloth torn from a shirt covering their faces.

During the robbery, Sovanne forced Kim onto a couch in the living room, digitally penetrated and raped her in front of her family.[2] While Sovanne was raping Kim, the police, who had been called by Kim's neighbor, arrived and ordered the occupants to open the door. All five assailants ran from the apartment. Neth, Chhoun and Mom were apprehended within a few minutes; loot from the robbery at Kim C.'s residence was found in the area where the three were caught. [Petitioner] and Sovanne were not apprehended at that time.

Neth was interviewed that morning by Officer Youn Seraypheap. Neth revealed the names of [Petitioner] and Sovanne, and Sovanne was taken into custody the same day. However, when Officer Seraypheap went to [Petitioner's] home, his parents said he had left the state.

Several latent fingerprints were taken from Savonne's Honda, two of which matched [Petitioner's]. One was obtained from the interior handle of the rear passenger door, and the other from the exterior driver's door window.

[Petitioner's] former girlfriend, Symain Samreth, with whom he had two children, testified she was living with [Petitioner] at his parents' home during March 1998. During the evening of March 29, Samreth was at a party with [Petitioner]; also present were Chhuon, Mom, Neth and Sovanne. Samreth and [Petitioner] argued and returned home about 9:00 p.m. Samreth and [Petitioner] went to bed about 10:00 p.m. Samreth awoke shortly before 7:00 a.m. and [Petitioner] was still there. Samreth did not know whether [Petitioner] left during the night.

On March 30, about 3:45 p.m., [Petitioner] took a Greyhound bus to Portland to find work. The following day, Samreth, along with her two children and a child of [Petitioner's] sister also took the bus to Portland. [Petitioner] was arrested later

---

[1] In exchange for giving truthful testimony regarding the home invasion robbery, Neth received a six-year term which he was serving at the time he testified.

[2] DNA analysis from the semen samples taken from Kim showed the samples came from Kim's boyfriend, with whom she had intercourse earlier that evening, and Sovanne.

in Portland. Following his arrest, [Petitioner] told Samreth "[if someone asks you, um, um, when I go to Oregon, um, say that I went on the 27th."

[Petitioner] sent Samreth a letter from jail, dated August 4, 1999, in which he wanted their children to know the following: "Daddy make a big mistake and Daddy has learned from his mistake. But Daddy promise you guys that you'll have a better life when Daddy get out. So tell Mommy keep praying for Daddy and stay faithful and strong."

Sophat Lim, Kim's neighbor who had seen some of the gang members enter Kim's apartment and who called the police, selected [Petitioner] from a photographic lineup based on his complexion and shape of his eyes. Lim was not sure of her identification because the person had worn a mask that covered half of his face.

Kim's bother, Da, was shown two photographic lineups. He selected Sovanne's photograph from the first lineup and [Petitioner's] from the second. However, Da was not sure of either identification.

At trial, the jury found [Petitioner] guilty of two counts of home invasion robbery in the first degree, one count of residential burglary in the first degree, one count of assault with a deadly weapon or force likely to produce great bodily injury, one count of rape in concert with force and one count of street terrorism.

Answer, Lodged Doc. 2 at 2-5.

Petitioner appealed his conviction to the California Court of Appeal, Third District, which denied Petitioner's appeal. *Id*. at 12. Petitioner also sought review from the California Supreme Court. Answer, Lodged Doc. 3 at 1. That request was also denied. Answer, Lodged Doc. 4 at 1. Finally, Petitioner petitioned the California Supreme Court for a writ of habeas corpus. Answer, Lodged Doc. 5 at 1. That petition was denied. Answer, Lodged Doc. 6 at 1.

**II**

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

3

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal court may grant an application for a writ of habeas corpus if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

A federal court looks to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal court must independently review the record to determine whether habeas corpus relief is available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). As the last reasoned state court opinion in this matter, this court will review the decision of the California Court of Appeal. *See* Answer, Lodged Doc. 2 at 1-12.

### III

Petitioner claims that there was insufficient evidence to support his conviction. Specifically, Petitioner claims that evidence of his involvement in the crime "was based almost entirely on accomplice testimony" and that there was insufficient "credible evidence to corroborate the testimony of the accomplice." Petition at 16.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005). In order to grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of the case. *Sarausad v. Porter*, 479 F.3d 671, 677 (9th Cir. 2007).

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985), *vacated on other grounds*, 789 F.2d 722 (9th Cir. 1986) (en banc), *rev'd*, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict. *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached."

1  *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court determines the

2  sufficiency of the evidence in reference to the substantive elements of the criminal offense as

3  defined by state law.  *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

4        As noted by the California Court of Appeal:

> [I]ndependent of Neth's testimony, the evidence showed that five men perpetrated a home invasion robbery in the early morning hours of March 30; one of the men, Sovanne, was shown by DNA testing to have been the person who raped an occupant of the residence; [Petitioner] was at a party with Sovanne the night of the robbery; [Petitioner] departed for Portland, Oregon, the afternoon of March 30, suggesting a consciousness of guilt; he asked Samreth to lie and say he had left for Portland on March 27, even more strongly suggesting a consciousness of guilt; he wrote a letter to Samreth while incarcerated admitting he had made a "big mistake" but had learned from the mistake, an admission from which it was reasonably inferable that the mistake was his participation in the home invasion robbery; he was tentatively identified by two separate persons as participating in the home invasion; and his fingerprints were on Sovanne's Honda.

13  Answer, Lodged Doc. 2 at 6.

14        Having reviewed the entire record this court finds sufficient evidence from which the

15  jury could have reasonably arrived at its verdict.  As noted by the California Court of Appeal,

16  Petitioner left the state immediately after the home invasion robbery, asked his ex-girlfriend to

17  lie about the date he left, admitted to making "a big mistake," was tentatively identified by two

18  witnesses and his fingerprints were found inside the vehicle used in the robbery.  *Id*.  Presented

19  with such evidence a jury could reasonably convict Petitioner of the crimes involved here.

**IV**

21        Petitioner also argues that he received ineffective assistance of counsel.  Specifically,

22  Petitioner alleges that his trial counsel was ineffective for failing to file a motion to suppress

23  Seng Neth's testimony and for failing to file a motion to suppress evidence that Petitioner's

24  fingerprint were found inside Sovanne's Honda.  Petition at 26.  This claim was only presented

25  to the California Supreme Court in Petitioner's habeas petition.  The California Supreme Court

26  denied that petition without issuing an opinion.  Thus, this court will conduct an independent

review of the record.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id. See also Williams*, 529 U.S. at 391-92; *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689). There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689). However, that deference "is predicated on counsel's performance

7

of sufficient investigation and preparation to make reasonably informed, reasonably sound judgments." *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

Petitioner argues that, "[i]f defense counsel would have interviewed at least three members of the same gang that [P]etitioner himself is a member [of]" counsel would have discovered that Petitioner and Neth were members of the same gang, that Petitioner frequently rode in Sovanne's car so that Petitioner's fingerprints would be present, that Neth knew this and falsely testified against Petitioner, and that these witnesses would have testified to Petitioner's "where-abouts at the time of the crimes." Petition at 28-32.

While evidence of Neth's gang affiliation was not presented at trial, Petitioner's attorney did introduce evidence that Neth gave conflicting accounts of whether Neth knew Petitioner and whether Petitioner was involved in the crime. RT at 578-580. Evidence was also presented showing that Petitioner had ridden in Neth's car prior to the date of the incident. *Id.* at 412. Evidence of Neth's motive for testifying was also admitted. *Id.* at 578-580. Finally, Petitioner's mother and father testified that Petitioner was home the evening of the 29th. *Id.* at 721 & 726. Petitioner's ex-girlfriend testified that Petitioner was in the bedroom with her when she fell asleep and when she awoke the next morning. *Id*. at 406.

While Petitioner's fellow gang members may have testified differently, Petitioner has not provided any affidavits or declarations from these alleged witnesses nor does he provide any details as to what their testimony would have been. Further, Petitioner does not explain wether the testimony of his fellow gang members would have supported or contradicted the testimony of Petitioner's father, mother and ex-girlfriend. Thus, Petitioner has not shown that the performance of his counsel was deficient or that there is a reasonable probability that but for counsel's deficient performance, the verdict would have been different.

**V**

Petitioner presents two challenges to the trial courts admission of evidence. First Petitioner contends that "the trial court abused its discretion by letting the prosecution introduce

8

a letter [P]etitioner wrote to his girlfriend in which [P]etitioner admitted to have (sic) made a mistake." Petition at 40. In rejecting Petitioner's argument, the California Court of Appeal found that, "the letter was highly relevant and there was no abuse of discretion in admitting it as evidence." Answer, Lodged Doc. 2 at 8.

Secondly, Petitioner claims that the state trial court erred by admitting evidence that Petitioner was affiliated with a gang. Petition at 52. This claim was only presented to the California Supreme Court in Petitioner's habeas petition. The California Supreme Court denied that petition without issuing an opinion. Thus, this court will conduct an independent review of the record.

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the [petitioner] of the fundamentally fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-920 (9th Cir. 1991). A federal court cannot disturb a state court's decision to admit evidence on due process grounds unless the admission of the evidence was "arbitrary or so prejudicial that it rendered the trial fundamentally unfair." *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986). *See also Mancuso v. Olivarez*, 292 F. 3d 939, 956 (2002) (a writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and ... the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" (quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)). In addition, in order to obtain habeas relief on the basis of evidentiary error, Petitioner must show that the error was not harmless. *Dillard v. Roe*, 244 F.3d 758, 767 n.7 (9th Cir. 2001). Therefore, in order to grant relief, the habeas court must find that the error had "'a substantial and injurious effect' on the verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). In this case, Petitioner has failed to demonstrate the evidentiary rulings by the trial court violated his federal constitutional rights.

*See Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000) (a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999) (same); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) (same).

Petitioner argues that the probative value of the letter was minimal and that when balanced against the prejudicial effect, "admission of the letter was prejudicial error." Petition at 42. Petitioner's argument in this regard reflects nothing more than mere disagreement with the trial court's rulings. As such, Petitioner's claim fails because he cannot demonstrate that admission of the letter was "arbitrary or so prejudicial that it rendered the trial fundamentally unfair."

In regards to admission of evidence concerning gang affiliation, Petitioner claims that it, "is now well established that evidence of gang membership or affiliation is not admissible when not relevant to an issue in dispute in the trial, and where such evidence is unduly prejudicial to a [petitioner's] right to a fair trial." *Id*. at 52. Ignoring that Petitioner has also claimed that his trial counsel was ineffective for failing to introduce evidence concerning Petitioner's gang affiliation, Petitioner fails to cite any legal authority supporting this proposition.

To the contrary, preceding his assertion, Petitioner cites California Penal Code § 13826.3 which provides, in part, that, "[a]n individual shall be subject to gang violence prosecution efforts who is under arrest for the commission or the attempted commission of any gang-related violent crime where the individual is (1) a known member of a gang, and (2) has exhibited a prior criminal background." Cal. Penal Code § 13826.3 (West 2007). Evidence that Petitioner was a known gang member and of had exhibited a prior criminal background was admitted at trial. RT at 504-514. Petitioner has presented no evidence that admission of his gang affiliation was "arbitrary or so prejudicial that it rendered the trial fundamentally unfair."

**VI**

Petitioner presents two claims concerning the interpretation or application of California

10

1  state law. First, Petitioner claims that the trial court erred in determining Petitioner's sentence.
2  Specifically, Petitioner contends that the application of California Penal Code § 667.61, "should
3  not apply to a defendant whose liability as an aider and abettor is based on application of the
4  natural and probable consequences doctrine." Petition at 42.
5      The relevant portions of California Penal Code § 667.61 provide that:

> (b) any person who is convicted of an offense specified in subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life.
> (c) This section shall apply to any of the following offenses...
> ....
> ....
> (3) Rape, spousal rape, or sexual penetration, in concert, in violation of Section 264.1....
> ....
> (e) The following circumstances shall apply to the offenses specified in subdivision (c):
> ....
> 2) ...the defendant committed the present offense during the commission of a burglary....

Cal. Penal Code § 667.61 (West 2006).

The California Court of Appeal found that, "[t]he language of section 667.61...is clear-it applies to all persons 'convicted' of an enumerated offense under one of the specified circumstances. Nothing...precludes its application based on the theory under which the person was convicted. Consequently, [Petitioner] was properly sentenced for his role in the rape." Answer, Lodged Doc. 2 at 9.

Petitioner also claims that he was improperly convicted of both residential burglary and home invasion robbery. Petition at 49. Specifically, Petitioner argues that burglary is a lesser included offense of home invasion robbery. *Id.* In rejecting this argument, the California Court of Appeal found that:

> [A]n offense is necessarily included in another if the charging

11

> allegations of the accusatory pleading include language describing it in such a way that if committed in that manner the lesser offense must necessarily be committed....
>
> ...[I]nsofar as charged in the accusatory pleading (here), the home invasion robbery could have occurred with the intent to steal being formed after the entry, a circumstance precluding conviction for burglary. Consequently, the burglary was not an offense necessarily included in the robberies as charged.

Answer, Lodged Doc. 2 at 10-11.

Both claims raised by Petitioner concern the interpretation or application of California state law and, in this regard, the conclusion by the California Court of Appeal may not be set aside in this federal habeas corpus proceeding. *See Estelle*, 502 U.S. at 67-68 (a federal writ is not available for alleged error in the interpretation or application of state law); *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own penal statutes"); *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989) (a federal court must defer to the state court's construction of its own penal code unless its interpretation is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation"). There is no evidence before this court that the interpretations of the California statutes by the California Court of Appeal were untenable and or amounted to subterfuge.

## VII

In accordance with the above, IT IS HEREBY ORDERED that Petitioner's request for habeas corpus relief is denied.

/////

DATED: November 6, 2007

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT JUDGE
Sitting by Designation